# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**FLORA TELEMAQUE,**

     **Plaintiff,**

**-vs-**              **Case No.  6:05-cv-909-Orl-DAB**

**COMMISSIONER OF SOCIAL
SECURITY,**

     **Defendant.**

_____

## MEMORANDUM OPINION & ORDER

The Plaintiff brings this action pursuant to the Social Security Act (the Act), as amended, Title 42 United States Code Section 405(g), to obtain judicial review of a final decision of the Commissioner of the Social Security Administration (the Commissioner) denying her claim for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) benefits under the Act.

The record has been reviewed, including a transcript of the proceedings before the Administrative Law Judge (ALJ), the exhibits filed and the administrative record, and the pleadings and memoranda submitted by the parties in this case.  Oral argument has not been requested.

For the reasons that follow, the decision of the Commissioner is **affirmed.**

## I. BACKGROUND

### A.  Procedural History

Plaintiff filed for a period of disability, DIB and SSI benefits on June 18, 2002.  R. 46-48, 213-16.  She alleged an onset of disability on May 31, 2002, due to pain in her right hand, and grief and depression from death of her son and mother.  R. 30, 46-48, 213-16.  Her application was denied

initially and upon reconsideration.  R. 23-24, 28-29.  Plaintiff requested a hearing, which was held

on September 22, 2003, before Administrative Law Judge Apolo Garcia (hereinafter referred to as

"ALJ").  R. 227-53.  In a decision dated December 15, 2004, the ALJ found Plaintiff not disabled as

defined under the Act through the date of his decision.  R. 10-20.  Plaintiff timely filed a Request for

Review of the ALJ's decision.  R. 8-9.  The Appeals Council denied Plaintiff's request on April 14,

2005.  R. 5-7.  Plaintiff filed this action for judicial review on June 17, 2005.  Doc. No. 1.

### B.   Medical History and Findings Summary

Plaintiff was 48 years old at the time of the ALJ's decision. R. 46, 213. She has a general

equivalency diploma (GED), and past relevant work experience as a child care provider, certified

nurse's aide, and store merchandiser.  R. 14, 61, 66, 76-83.  Plaintiff's medical history is set forth in

detail in the ALJ's decision.  By way of summary, Plaintiff alleges disability beginning May 31, 2002,

due to a right hand injury, high blood pressure, diabetes, and an emotional handicap.  R. 60, 89.  After

reviewing Plaintiff's medical records and Plaintiff's testimony, the ALJ found that Plaintiff suffered

from cellulitis/abscess of the right hand, diabetes mellitus, hypertension, and obesity, which were

"severe" medically determinable impairments, but not severe enough to meet or medically equal one

of the impairments listed in Appendix 1, Subpart P, Regulations No. 4.  R. 19, Findings 3 & 4.  The

ALJ determined that Plaintiff retained the residual functional capacity (RFC) to perform light work,

as she could lift twenty pounds and stand, walk, and sit six hours in an eight-hour workday.  R. 19,

Finding 6.  In making this determination, the ALJ found that Plaintiff's allegations regarding her

limitations were not totally credible for the reasons set forth in the body of the decision.[1]  R. 19,

---

[1]  Within the body of the decision, the ALJ discredited Plaintiff's reported limitations based on several specific
inconsistencies between those limits, medical findings and Plaintiff's stated daily activities.  R. 17.

Finding 5.  Based upon Plaintiff's RFC, the ALJ determined that she could not perform her past relevant work.  R. 19, Finding 7.  Considering Plaintiff's vocational profile and RFC, the ALJ applied the Medical-Vocational Guidelines (the grids), 20 C.F.R. Pt. 404, Subpt. P, App. 2, and concluded that Plaintiff could perform work existing in significant numbers in the national economy.  R. 19, Finding 11.  Accordingly, the ALJ determined that Plaintiff was not under a disability, as defined in the Act, at any time through the date of the decision.  R. 19, Finding 12.

Plaintiff now asserts three principal points of error.  First, Plaintiff contends the ALJ erred by finding that her mental impairment was not severe. Second, she argues that the ALJ erred by relying upon the grids, rather than obtaining vocational expert (VE) testimony, because Plaintiff suffered non-exertional impairments.  Third, she asserts that the ALJ erred by improperly applying the pain standard and in evaluating her credibility.  For the reasons that follow, the decision of the Commissioner is **AFFIRMED**.

## II.  STANDARD OF REVIEW

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971).  The Commissioner's findings of fact are conclusive if supported by substantial evidence.  42 U.S.C. § 405(g).  Substantial evidence is more than a scintilla – *i.e.*, the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

-3-

"If the Commissioner's decision is supported by substantial evidence, this Court must affirm, even if the proof preponderates against it." *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n. 8 (11th Cir. 2004). "We may not decide facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner.]" *Id.* (internal quotation and citation omitted). *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560; *accord, Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings).

### A.    A severe mental impairment

Plaintiff argues that the medical evidence reflected severe depression. In support thereof, she relies on her testimony that she needed assistance from the bus driver on the way to her hearing and that she needs occasional help from her daughter with cooking and cleaning and records from Lakeside Alternatives that report she was depressed with a global assessment of functioning score ("GAF") between 46-60.

At Step 2 of the five-step evaluation process, the ALJ is called upon to determine whether a claimant's impairments are severe. By definition, this inquiry is a "threshold" inquiry. It allows only claims based on the most trivial impairments to be rejected. In this Circuit, an impairment is not severe only if the abnormality is so slight and its effect so minimal that it would clearly not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience. A claimant need show only that her impairment is not so slight and its effect not so minimal. *McDaniel v. Bowen*, 800 F.2d 1026, 1031 (11th Cir. 1986).

The ALJ found:

The most recent State Agency Psychologist evaluation shows that the claimant has a non-severe mental impairment secondary to mild restrictions of activities of daily living, mild limitations in social functioning and mild deficiencies in concentration, persistence and pace.  Dr. Hinkeldey also reported the claimant's functional ability was only mildly affected and would improve if she returned to employment.  She has sporadically been treated at Lakeside Alternatives with improvement of her condition when taking medication.  However, she has not been consistent with treatment or medications. Progress notes show she does well when taking medications and her depression is only mild.  Therefore, the undersigned agrees with the State Agency Psychologist that the claimant has only mild restrictions of activities of daily living. She is able to take care of her personal needs and the needs of her grandchildren.  She bakes chicken, rice, pork chops and fries chicken.  She cleans and vacuums and does the laundry.  Her limitations in social functioning also appear only mildly affected. Reports show that she gets along with everyone and goes to church on Sundays. She is able to take public transportation.  Dr. Hinkeldey found the claimant's attention and concentration adequate.  In conclusion, the undersigned agrees with the State Agency Psychologist that the claimant's mental impairment is non-severe (20 CFR 404.1520, 416.920, and Social Security Ruling 96-6p).

R. 16.

Here, the evidence reflects depression symptoms related to Plaintiff's grief over the deaths of

three family members and stress from her daughter running away.  As evidence of the severity of her

depression, Plaintiff points to records from December 11, 2002, when she first sought treatment at

Lakeside Alternatives following the deaths of her mother (in October 2002), her sister (in May 2002),

and her uncle (in November 2002) in a six month period. R. 173.  She was diagnosed with depression

and noted to have decreased energy, mood swings, decreased sleep, crying spells, nervousness and

forgetfulness, and reported having thoughts that she wished she had been killed instead of her son.

R. 173-75.   She was assessed with a GAF of 46. R. 177.   Prior to that visit, Plaintiff had not been

treated for mental health problems since 1995-96 time frame, presumably around the time her son died

seven years before. R. 173.  Records from December 19, 2002, February 6, 2002, and April 12, 2003

report Plaintiff undergoing therapy for depression and grief issues, with refills on her medications. R. 163, 165, 168-72.

However, as the Commissioner aptly argues, it is not unreasonable to expect initial treatment GAF ratings at 40 or 46 – assessed during the time Plaintiff developed depression and anxiety following the close-together deaths of her sister, mother, and uncle, as well as unexpectedly inheriting the custody of her young niece and nephew – to improve. R. 173. Although Plaintiff points to records from July 24, 2003 in support of the severity of her depression (from stress related to her teenage daughter), after only six months of treatment at Lakeside Alternatives, Plaintiff reported doing well on Prozac and Trazadone, and was diagnosed with mild depression and a GAF score between 55 and 60. R. 163, 209 (October 16, 2003; GAF between 55-60), 211. Although Plaintiff sought treatment again on June 8, 2004, despite having run out of medication for two weeks, she was only mildly depressed from stress related to her daughter running away; her GAF was 51. R. 205; *see* R. 207 (February 13, 2004; out of medications for one month; no GAF).

Plaintiff appears to argue that the ALJ's opinion was based on an outdated consultative mental health evaluation from June 9, 2003 which was not representative of Plaintiff's condition at the hearing in September 2004, because she testified that she needed directions from the bus driver to get to the hearing (one block from the bus stop). R. 235. Asking for directions, standing alone, is not an indication that Plaintiff is any more than mildly depressed. It is clear that the ALJ considered evidence from Lakeside Alternatives from as late as June 2004. *See* R. 16.

Plaintiff contends that the ALJ failed to recognize Dr. Hinkeldey's September 19, 2002 opinion that Plaintiff's social functioning appeared to be marginal and her functional ability appeared affected by depression to "some mild degree." R. 121-23. However, Dr. Hinkeldey also opined that

-6-

Plaintiff's social skills were adequate and Plaintiff "will likely improve and be functional for employment.  Improvement may be more rapid with treatment which she is not receiving at the present time."  R. 123.

Consistent with Plaintiff's functional abilities, Plaintiff's applications to the SSA state that she is able to take public transportation, shop for food and clothes, and pay her light bill and rent.  R. 51-54, 70, 72-75, 84-87, 95-100.  Plaintiff and other family members reported she got along well with family, friends, and the public, as well as those in authority.  R. 53-54, 74-75, 86-87.  According to her niece, she "got out more now" as of February 2003 and was attending church and support groups at Lakeside Alternatives.  R. 98.

Based upon this evidence, the ALJ concurred with state agency psychologists who had the opportunity to review the record, including Dr. Hinkeldey's consultative psychological evaluation, who opined that Plaintiff's mental impairment was not severe and her limitations were mild.  R. 16, 124-37, 181-94.  Thus, it is apparent that the ALJ carefully considered the evidence.  The medical and other evidence support the ALJ's determination that Plaintiff did not suffer a severe mental impairment.

### B.      Pain and credibility.

Plaintiff asserts that the ALJ erred in evaluating her non-exertional limitations, *i.e.*, manipulative limitations and pain and mental limitations.  She also argues that the ALJ erred by finding her subjective complaints credible only to the extent she is limited to light work.  She contends that the record demonstrates her credibility and that the ALJ failed to provide adequate and specific reasons for discrediting her complaints.  The Commissioner responds that the ALJ's

evaluation of Plaintiff's impairments properly complied with the regulations regarding the evaluation of pain and other symptoms.

Although the ALJ did not refer to the Eleventh Circuit's pain standard as such, he clearly was aware of the governing standards for evaluating subjective complaints because he cited the applicable regulations and Social Security Ruling ("SSR") 96-7p.  R. 17.  *See Wilson v. Barnhart*, 284 F.3d 1219, 1225-26 (11th Cir. 2002)(per curiam) (ALJ properly applied the Eleventh Circuit pain standard even though he did not "cite or refer to the language of the three-part test" as "his findings and discussion indicate that the standard was applied").  Moreover, the ALJ complied with those standards.  He determined that Plaintiff had an objective medical condition that could give rise to the alleged symptoms, because otherwise the ALJ would not be required to assess the credibility of the alleged complaints.

Having concluded that he had to make a credibility determination of Plaintiff's subjective complaints, the ALJ plainly recognized that he had to articulate a reasonable basis for his determination.  In discussing Plaintiff's RFC, the ALJ stated:

> Two State Agency Physicians also had the opportunity to review the medical evidence and opined that the claimant had no impairment that cause limitations in functioning. The claimant was treated for cellulitis of her hand in June 2002 and Dr. Ham-Ying reported her grip strength was 3/5 as of examination of October 2002.  However, following this examination, there are no further complaints of hand weakness nor indication of any limitation with her hands.  She can use a fork and spoon, cook, clean and write.  She has been treated for diabetes and hypertension and has been found non-adherent, at times, with medication.  But when taking her medication properly, her sugar and blood pressure are controlled.  Clinical findings from Dr. Ham-Ying are normal except for obesity.  Therefore, the undersigned does limit the claimant to light exertion due to her combination of obesity, diabetes, and hypertension (Social Security Ruling 96-6p).

> The claimant's subjective complaints and symptoms, including her allegations of pain and limitations, as well as depression, have been carefully compared to the other

-8-

evidence.  The claimant's testimony and other reports that she lived a fully functional type lifestyle, which is consistent with the medical evidence.  The claimant is able to prepare all meals, she can go to the grocery store, buy clothes and pay her light bill and rent.  She dusts, vacuums, does the laundry and dishes.  She can go to church and shopping.  She is able to take public transportation.  There are no reported side effects from medication.  In fact, if taking her medication properly, she has only mild depression and her diabetes and hypertension are controlled.  Activities and reports such as these are inconsistent with her allegations of incapacitating limitations or pain. This is not to minimize the medical impairments demonstrated in the record.  The claimant does have impairments that limit her activities with heavy lifting.  However, the clinical findings resulting from these impairments do not appear to be producing pain or limitations of incapacitating proportions.  Accordingly, the undersigned finds that the claimant's allegations and subjective symptoms beyond what could be expected considering the objective laboratory and clinical findings (Social Security Ruling 96-7p).

R. 17.

Where an ALJ decides not to credit a claimant's testimony about pain, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding. *Jones v. Dep't of Health and Human Servs.*, 941 F.2d 1529, 1532 (11th Cir. 1991) (articulated reasons must be based on substantial evidence).  A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record.  *Foote*, 67 F.3d at 1561-62; *Cannon v. Bowen*, 858 F.2d 1541, 1545 (11th Cir. 1988).

The ALJ was very specific in the reasons he stated for discrediting Plaintiff's subjective complaints.  As the ALJ found, Plaintiff was only treated during a four-month period for her cellulitis/abscess right hand impairment.  While Plaintiff complained of continued hand pain and swelling at the hearing in September 2004 (R. 239-41), the ALJ found the record completely devoid of further treatment or complaints of hand weakness or indication of any hand limitations following Dr. Ham-Ying's October 2002 examination.  R. 17.

Plaintiff contends that the ALJ erred in failing to take into consideration her complaints in October 2003 (R. 198) of pain in the right side and in her arm and, at the September 2004 hearing, of problems in her right hand. R. 239-41. Plaintiff testified at the September 2004 hearing that she still experienced some pain in her hand but that she had medication for it, and she was in severe pain "sometimes." R. 248. Plaintiff testified that she could not take tickets (as in past relevant work) because she was afraid of re-injuring it: "if I hurt it, it hurts, you know." R. 241. There is one single mention of right side and arm pain for one week amongst extensive records of nearly monthly visits to her primary care physicians (R. 139-162, 195-204; there is no other mention of contemporaneous right hand pain (although several records refer to a history of cellulitis in the right hand). R. 198. Plaintiff's right side pain appears to be a separate problem that occasionally re-occurred in her right side and arm as opposed to her hand, since prior to the cellulitis/abscess in her right hand in June 2002, Plaintiff had reported right arm pain for one to two days in July 2001. R. 152.

Moreover, no physician of record opined that Plaintiff had any manipulative limitations. In response to questioning by the ALJ, Plaintiff admitted that she could use a fork, spoon, and knife, cook, clean, fold clothes, and write (R. 233, 240-41), which cuts against Plaintiff's claims of a lack of bilateral dexterity to preclude application of the grid rules. As the ALJ observed, when Plaintiff is taking her medication properly, she has only mild depression and her diabetes and hypertension are controlled. R. 17. Plaintiff's high blood pressure and diabetes were effectively treated with medications at the Pine Hills Family Health Center; however, Plaintiff was repeatedly noncompliant. R. 118 (out of compliance for some time), 142-43, 148, 179, 200, 205, 207; pre-onset date R. 153, 157-58 (out of medications for one year). As long as Plaintiff was taking medication as instructed, these conditions were documented as under good control. R. 139-41, 150-51, 197-200. The record

-10-

also shows that Plaintiff continued to smoke despite her physicians' advice to quit. *See, e.g.,* R. 140, 198.

The ALJ also relied on Plaintiff's testimony and other reports that she lived a fully functional lifestyle consistent with the medical evidence. Plaintiff and her relatives reported that she cared for her personal needs, did some light vacuuming, prepared her own meals, washed dishes, did the laundry, managed her own money, drove, was able to take public transportation, shopped for food and clothes, paid her light bill and rent, watched television, and cared for her niece and nephew after the death of their grandmother. R. 51-54, 70, 72-75, 84-87, 95-100, 168 ("Stays at home during the day. Is taking care of 2 grandchildren who were staying with sister who died recently. Children are 6 & 8."). The ALJ offered specific reasons for discrediting Plaintiff's subjective complaints, including inconsistencies between her reports and the medical records, as well as inconsistencies between her statements and her activities of daily living. These are factors the ALJ is directed to consider. 20 C.F.R. §§ 404.1529; 416.929. The Court finds that the ALJ's reasons are supported by substantial evidence.

### C.   Application of the grids

Plaintiff claims that because she suffered from depression, she had a nonexertional limitation, precluding the application of the grids and requiring VE testimony.

Once the ALJ finds that a claimant cannot return to her prior work, the burden of proof shifts to the Commissioner to establish that the claimant court perform other work that exists in the national economy. *Foote*, 67 F.3d at 1558. In determining whether the Commissioner has met this burden, the ALJ must develop a full record regarding the vocational opportunities available to a claimant. *Allen v. Sullivan*, 880 F.2d 1200, 1201 (11th Cir. 1989). This burden may sometimes be met through

exclusive reliance on the "grids." *Foote*, 67 F.3d at 1558. Exclusive reliance on the "grids" is appropriate where the claimant suffers primarily from an exertional impairment, without significant non-exertional factors. 20 C.F.R. Part 404, Subpart P, Appendix 2, § 200.00(e); *Foote*, 67 F.3d at 1559; *Heckler v. Campbell*, 461 U.S. 458 (1983) (exclusive reliance on the grids is appropriate in cases involving only exertional impairments, impairments which place limits on an individual's ability to meet job strength requirements).

Exclusive reliance is not appropriate "either when a claimant is unable to perform a full range of work at a given residual functional level or when a claimant has a non-exertional impairment that significantly limits basic work skills." *Walter v. Bowen*, 826 F.2d 996, 1002-3 (11th Cir. 1987). In almost all of such cases, the Commissioner's burden can be met only through the use of a VE. *Foote*, 67 F.3d at 1559. It is only when the claimant can clearly do unlimited types of work at a given residual functional level that it is unnecessary to call a VE to establish whether the claimant can perform work which exists in the national economy. In any event, the ALJ must make a specific finding as to whether the non-exertional limitations are severe enough to preclude a wide range of employment at the given work capacity level indicated by the exertional limitations. *Foote*, 67 F.3d at 1559.

In this case, the ALJ properly determined that Plaintiff did not suffer from a severe mental impairment. R. 16. The ALJ considered Plaintiff's physical impairments, including post-status cellulitis of the right hand, diabetes, and high blood pressure, and properly assigned an RFC for light work. The ALJ further specifically found that Plaintiff's capacity for light work was not compromised by any nonexertional limitations. R. 17-18. Because Plaintiff could perform unlimited types of work at a light level, it was unnecessary to call a VE to establish whether she could perform

work existing in the national economy.  *See Foote*, 67 F.3d at 1559.  Accordingly, the ALJ was justified in his reliance upon the grids.  *See id.*

### III. CONCLUSION

The record in this case shows that Plaintiff has suffered several personal losses and suffers from diabetes and high blood pressure, which affect her activities to some degree.  The ALJ appropriately considered these circumstances and analyzed them in relation to the exacting disability standard under the Social Security Act.  For the reasons set forth above, the ALJ's decision is consistent with the requirements of law and is supported by substantial evidence.  Accordingly, the Court **AFFIRMS** the Commissioner's decision pursuant to sentence four of 42 U.S.C. § 405(g).  The Clerk of the Court is directed to enter judgment consistent with this opinion and, thereafter, to close the file.

**DONE** and **ORDERED** in Orlando, Florida on August 31, 2006.

*David A. Baker*
DAVID A. BAKER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record